UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SEITHER & CHERRY QUAD CITIES,
INC.,                                                  Case No. 23-11310

      Plaintiff,                                 F. Kay Behm
v.                                                      U.S. District Judge

OAKLAND AUTOMATION, LLC, *et al.*,

      Defendants.
_____ /

and

AP ELECTRIC, INC.,

      Plaintiff,                                 Case No. 23-11342

OAKLAND AUTOMATION, LLC, *et al.*,          F. Kay Behm
                                                        U.S. District Judge
      Defendants.
_____ /

**CONSOLIDATED OPINION AND ORDER
GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTIONS TO DISMISS
(*Seither & Cherry*, ECF No. 37; *AP Electric*, ECF No. 39)**

    This consolidated opinion is issued in two separate cases filed against

Defendants Oakland Automation, LLC ("Oakland Automation"), Oakland

Industries, LLC ("OIL"); Oakland Industries Blocker Corp. ("OIB"); and Interclean

Equipment, LLC ("Interclean").  While the facts of these cases differ slightly, they

1

arise from similar situations and involve overlapping issues of law.  As such, they have been consolidated for the limited purpose of issuing this opinion.[1]

The first case, *Seither & Cherry v. Oakland Automation*, 23-11310 ("*Seither & Cherry*"), was initially filed on June 1, 2023.  *Seither & Cherry*, ECF No. 1.  Plaintiff Seither & Cherry ("S&C") filed an amended complaint on July 13, 2023, a second amended complaint on November 20, 2023, and a third amended complaint on February 21, 2024.  *Seither & Cherry*, ECF Nos. 12, 26, 31.  Defendants Interclean, OIB, and OIL (the "Moving Defendants") filed their motion to dismiss on March 20, 2024.  *Seither & Cherry*, ECF No. 37.  S&C filed a response on April 10, 2024, and the Moving Defendants filed a reply on April 24, 2024.  *Seither & Cherry*, ECF Nos. 39, 40.  The second case, *AP Electric v. Oakland Automation*, 23-11342 ("*AP Electric*"), was initially filed on June 5, 2023.  (*AP Electric*, ECF No. 1).  *AP Electric* was previously before District Judge Shalina D. Kumar, but was reassigned to the undersigned as a companion on June 12, 2024.  Plaintiff AP Electric ("APE") filed an amended complaint on November 20, 2023, and a second amended complaint on February 9, 2024.  *AP Electric*, ECF Nos. 28, 32.  The Moving Defendants filed their motion to dismiss on March 19, 2024.  *AP Electric*, ECF No. 39.  AP Electric filed a response on April 9, 2024, and the Moving Defendants filed a reply on April 23, 2024.  *AP Electric*, ECF Nos. 42, 43.  The Court held a combined hearing on both motions to dismiss on July 17, 2024.  *See Seither & Cherry*, ECF No. 43; *AP Electric*,

---

[1] The parties were asked at the July 17, 2024, hearing whether they had any specific objections to consolidating these cases for the purposes of issuing this opinion.  No objections were raised.

ECF No. 46.  Both parties submitted supplemental briefing after the hearing.  *AP Electric,* ECF Nos. 50, 51; *Seither & Cherry,* ECF Nos. 46, 47, 50, 51.  Considering the arguments made in briefing and at the hearing, as well as in the parties' pleadings, the Court now **GRANTS IN PART** and **DENIES IN PART** the Moving Defendants' motions to dismiss in both cases.

## I.   FACTUAL BACKGROUND

### A.   <u>Allegations Common to Both Cases</u>

Both cases were brought against the same four Defendants: Oakland Automation, OIB, OIL, and Interclean.  Plaintiffs generally allege that Defendants Oakland Automation ("OA"), Interclean, and non-party Autotac ("Autotac") are "substantively divisions of [the] merged entity doing business as 'Oakland Industries,'" which "manufactures auto cleaning equipment for the automotive industry."  *Seither & Cherry*, ECF No. 31, PageID.423; *AP Electric*, ECF No. 32, PageID.252.  Plaintiffs argue that "Oakland Industries" ("OIL") held itself out to Plaintiffs, and the public, as a single company.  *Seither & Cherry*, ECF No. 39, PageID.588; *AP Electric*, ECF No. 42, PageID.390.  Specifically, Plaintiffs allege that "Defendants, using the name 'Oakland Industries,' intentionally merged, conflated, consolidated and integrated their business operations, including the following:

> a) commingled, merged and integrated business operations, management, accounting, ownership, and control;
> b) disregard for separation of control, assets or operations;
> c) cross-collateralization and securitized lending;
> d) merged and integrated financing;

      e)  merged, integrated and combined business policies and directives;

      f)  disregard for separation of investors, ownership, and business operations;

      g)  consolidation and merger of accounting and enterprise software, data and bookkeeping;

      h)  merger and cross-utilization of employees and resources;

      i)  utilization of identical, undifferentiated terms for contracting with third parties; and

      j)  disregard for customary and normal corporate entities."

*Seither & Cherry*, ECF No. 31, PageID.422-23; *AP Electric*, ECF No. 32, PageID.252-53.  As a whole, Plaintiffs argue that Defendants' actions "w[ere] done with the purpose of deceiving and fraudulently inducing third parties, including [S&C and AP Electric], into entering into contracts with [Oakland Automation], and performing services or payments, that [Oakland Automation] and Defendants knew neither [Oakland Automation] nor Defendants would perform as promised, enriching and benefiting Defendants."  *Id.*

      As evidence of the Defendants' improper "comingling" of their assets, Plaintiffs allege that Greg Harvey served as CEO of all of the Defendant companies concurrently – OIB, OIL, Oakland Automation, and Interclean, as well as non-party Autotac – at all times relevant to this action.  *Seither & Cherry*, ECF No. 31, PageID.425; *AP Electric*, ECF No. 32, PageID.255.  Plaintiffs argue there were also "frequent transfers of money, property and other assets among and between Defendants without, *inter alia*, proper compensation or documentation" and "repeated failure to observe corporate formalities such as, *inter alia*, failure to []

maintain corporate records and meeting minutes as required by law." *Seither &
Cherry*, ECF No. 31, PageID.425-27; *AP Electric*, ECF No. 32, PageID.255-57.

Plaintiffs allege that "[b]eginning in or about the first quarter of 2021 and
thereafter, Defendants' representatives and officers knew that [Oakland
Automation], under the control and combination of Defendants, was insolvent, and
could not perform its contracts with contractors who performed certain work" on the
relevant projects, including both S&C and AP Electric. *Id.* Plaintiffs allege in
response that, "Defendants developed a plan – the 'Oakland 100' initiative –
wherein [Oakland Automation] would solicit and sell $100 million in contract
revenue by signing contracts, including the Subject Contracts, which would raise
funds that were transferred between and comingled among the Defendants and
which contracts could not all be performed by [Oakland Automation.]" *Id.*

**B.    Facts specific to Plaintiff S&C**

Plaintiff S&C alleges that Oakland Automation contracted with Toyota Motor
Manufacturing ("TMM" or "Toyota") in the first half of 2022 "for the installation of
five (5) robotics projects at three TMM locations," referred to as the "Toyota
Projects." *Seither & Cherry*, ECF No. 31, PageID.424. These projects were located
at Toyota Motor Manufacturing facilities in Princeton, Indiana ("TMM Indiana" and
"TMMI"), Georgetown, Kentucky ("TMM Kentucky"), and San Antonio, Texas
("TMM Texas"). *Id.* S&C alleges that, "beginning on May 13, 2022" Oakland
Automation "entered into contracts with S&C for S&C to provide the millwright
scope of work for the Toyota Projects." *Id.* They further allege that, "[w]hile
[Oakland Automation] made partial payments to S&C for some of the Subject

Contracts, [Oakland Automation] materially breached the terms of the Subject Contracts by failing to pay S&C" the amount due on 14 invoices. *Id.* S&C now alleges the total undisputed balance due on their account with Oakland Automation is $710,096.11. *Id.* ("[Oakland Automation]'s stated account with S&C for the Toyota Projects has an undisputed balance due of $710,096.11"). S&C alleges it sent Oakland Automation a demand letter on May 3, 2023, through its counsel, which informed Oakland Automation that it "breached the Subject Contracts, [] was indebted to S&C for, and had an overdue balance of, $710,096.11" and demanded that Oakland Automation pay the overdue balance by May 17, 2023. *Id.*, PageID.425. However, S&C alleges that, "[t]o date . . . [Oakland Automation] failed to respond to S&C's above demand, or make any payments, or provide any reimbursement, to S&C for [Oakland Automation]'s breach of the Subject Contracts." *Id.* S&C filed the instant lawsuit seeking damages "in excess of $710,096.11 plus interest, attorneys' fees, costs and expenses" including compensation for "damage to business reputation [and] lost business opportunities." *Id.*, PageID.444.

### C.    Facts specific to Plaintiff *AP Electric*

Plaintiff AP Electric alleges that Oakland Automation contracted with Toyota Motor Manufacturing Indiana ("TMMI" or "Toyota") "for the installation of the TMMI East Base Interior Robot project ("TMMI Project"), for TMMI's plant located at 400 Tulip Tree Drive, Princeton, Indiana." *AP Electric*, ECF No. 32, PageID.254. AP Electric alleges that beginning on May 12, 2022, Oakland Automation "entered into a contract with [AP Electric] for [AP Electric] to provide the electrical scope of

work for the TMMI Project." *Id.* AP Electric alleges that, on October 17, 2022, Oakland Automation made a partial payment to them of $155,000, pursuant to the terms of the underlying contract. *Id.* This payment was "related to the June 9, 2022 Invoice [AP Electric] submitted to [Oakland Automation.]. *Id.* However, AP Electric alleges Oakland Automation then "failed to pay [AP Electric] a total amount of $325,663.43 for the following five invoices submitted to [Oakland Automation]" from July 19, 2022 until May 8, 2023. AP Electric alleges the total undisputed balance due on their account with Oakland Automation for the TMMI Project is $325,663.43. *Id.* AP Electric similarly alleges it sent Oakland Automation a demand letter on May 1, 2023, through its counsel, which informed Oakland Automation that it "breached the Subject Contract, [] was indebted to [AP Electric] for, and had an overdue balance of, $325,663.43" and demanded that Oakland Automation pay the overdue balance by May 15, 2023. *Id.*, PageID.254-55. However, "[t]o date . . . [Oakland Automation] failed to respond to [AP Electric]'s above demand, or make any payments, or provide any reimbursement, to [AP Electric] for [Oakland Automation]'s breach of the Subject Contract." *Id.*, PageID.255.

### D.   Claims Brought Against Defendants

While there are a number of factual differences between the two cases, Plaintiffs S&C and AP Electric bring identical counts against the relevant Defendants. These claims include:

- Count I for Breach of Contract against Defendant Oakland Automation;
- Count II for Account Stated against Defendant Oakland Automation;

- Count III for Promissory Estoppel/Detrimental Reliance against all Defendants;
- Count IV for Unjust Enrichment against all Defendants;
- Count V for Fraud against all Defendants;
- Count VI for violations of Michigan's Uniform Voidable Transactions Act (MUVTA), Mich. Comp. Laws § 566.31 *et seq.* against all Defendants;
- Count VII for violations of Michigan's Building Contract Fund Act, Mich. Comp. Laws § 570.151 *et seq.* in *Seither & Cherry* brought against Defendants Oakland Automation and OIL; in *AP Electric* brought against Defendants Oakland Automation, OIL, and OIB;[2]
- Count VIII for statutory conversion, in violation of Mich. Comp. Laws § 600.2919a in *Seither & Cherry* brought against Defendants Oakland Automation, OIL, and Interclean; in *AP Electric* brought against Defendants OIL, OIB, and Interclean;[3]
- Count IX for common law conversion, in *Seither & Cherry* brought against Defendants Oakland Automation, OIL, and Interclean; in *AP Electric* brought against Defendants OIL, OIB, and Interclean;[4]
- Count X for "Alter Ego/Piercing Corporate Veil" against all Defendants; and
- Count XI for Civil Conspiracy against all Defendants.

## II.   STANDARD OF REVIEW

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must "construe the complaint in the light most favorable to the [nonmoving party] . . . [and] accept all well-pled factual allegations as true." *League of United Latin Am.*

---

[2] At oral argument, Plaintiff's counsel indicated that both complaints should have included Oakland Blocker as a Defendant on this Count.  ECF No. 44, PageID.765.

[3] At oral argument, Plaintiff's counsel indicated that the complaints should have had identical defendants (ie. Oakland Blocker should be listed on both complaints for this count).  ECF No. 44, PageID.769.

[4] Again, the court understands Plaintiff to say that the counts should have been identical, ie. Oakland Blocker be included on both complaints for both counts. In other words, there was no substantive difference between the two complaints meant by the omission of Oakland Blocker, and the omission was unintentional. ECF No. 44, PageID.769.

*Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *see also Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 562 (6th Cir. 2003). The complaint must provide "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Moreover, the complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A claim has "facial plausibility" when the nonmoving party pleads facts that "allow[] the court to draw the reasonable inference that the [moving party] is liable for the misconduct alleged." *Id.* at 678. The factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens*, 500 F.3d at 527.

In evaluating the allegations in the complaint, the court must be mindful of its limited task when presented with a motion to dismiss under Rule 12(b)(6). At the motion to dismiss stage, the court does not consider whether the factual allegations are probably true; instead the court must accept the factual allegations as true, even when skeptical. *See Twombly*, 550 U.S. at 555 (a court must proceed "on the assumption that all the allegations in the complaint are true (even if doubtful in fact)"); *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"). Indeed, in assessing the sufficiency of a complaint, the court must determine only whether "'the claimant is entitled to offer evidence to support the

9

claims,' not whether the plaintiff can ultimately prove the facts alleged." *See United States v. SouthEast Eye Specialists, PLLC*, 570 F. Supp. 3d 561, 574 (M.D. Tenn. 2021) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)).

In general, when deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court's review is limited to the four corners of the pleading at issue. Fed. R. Civ. P 12(d); *see also Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125, 1139 (W.D. Mich. 2019) (citing *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011)) (noting that "[i]n general, in deciding a Rule 12(b)(6) motion to dismiss the court is limited to considering only the pleadings").  Nonetheless, it is well established that, in some circumstances, a court may consider matters beyond the pleadings without converting the motion to one for summary judgment under Rule 56.  Examples include "any exhibits attached [to the Complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

## III.  ANALYSIS

Despite the minor factual differences between these cases, the Moving Defendants' motions to dismiss raise substantively similar legal arguments. Specifically, they allege "Plaintiff's [complaint] fails to make specific factual allegations as to why or how the Moving Defendants would be liable for alleged damages arising from the breach of a contract between Plaintiff and Oakland Automation, or how the conduct of the Moving Defendants was unlawful."  *Seither*

10

*& Cherry*, ECF No. 37, PageID.556; *AP Electric*, ECF No. 39, PageID.357.  As a result, they argue "Plaintiffs failed to and cannot state a claim on which relief may be granted." *Id*.  The Moving Defendants' motions address each of the counts in a different order than they are presented in the complaints, and the court will follow their order in this opinion for clarity.  This case is before the court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, and Plaintiffs' claims are based entirely on state law. Therefore, the court must apply the law of the forum state. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938); *Talley v. State Farm Fire & Cas. Co.*, 223 F.3d 323, 326 (6th Cir. 2000).  Critically to this case, Defendant Oakland Automation is not part of the Moving Defendants, and neither the instant motions nor this Court's Order addresses the claims brought only against Oakland Automation.

### A.   Alter Ego/Piercing the Corporate Veil

Count X in both complaints, "Alter Ego/Piercing Corporate Veil," alleges that "[Oakland Automation] was dominated and controlled by Defendants such that [Oakland Automation] was a mere tool and instrumentality of Defendants, comingling and sharing financing and business operations." *Seither & Cherry*, ECF No. 31, PageID.443; *AP Electric*, ECF No. 32, PageID.273.  Plaintiffs further allege "Defendants used [Oakland Automation] as an alter ego to mislead and defraud [Plaintiffs]," "Defendants are entities that are merged, conflated, and consolidated with respect to their business operations, ownership, control, management, accounting, *inter alia*, such that Defendants are tools and instrumentalities of each other used for the purpose of defrauding Defendants' debtholders," and this conspiracy and combination "was done with the purpose of deceiving and

11

fraudulently inducing third parties, including [Plaintiffs], into entering into
contracts with [Oakland Automation] . . . ."  *Id.*  As a result, Plaintiffs ask the court
to deem Defendants to be alter egos of each other and award Plaintiffs damages
against Defendants, "jointly and severally."  *Id.*

      The Moving Defendants' motions first argue that Count X of Plaintiffs'
complaints should be dismissed because "[i]t is well established that piercing the
corporate veil is not itself a cause of action; it is a post-judgment remedy."  *Seither
& Cherry*, ECF No. 37, PageID.559; *AP Electric*, ECF No. 39, PageID.361 (citing
*Brennan v. Nat'l Action Fin. Servs., Inc.*, No. 12-CV-10551, 2012 WL 3888218, at *3
(E.D. Mich. Sept. 7, 2012) (internal citations omitted)).  Michigan courts have
repeatedly held that piercing the corporate veil is an equitable remedy, not an
independent cause of action.  *Thomas v. Khrawesh*, 272 F. Supp. 3d 995, 1000 (E.D.
Mich. 2017) (citing *Brennan*, 2012 WL 3888218, at *3); *see Gallagher v. Persha*, 315
Mich. App. 647, 662 (2016) ("[A] party certainly needs to successfully pursue a cause
of action before it can pursue a remedy . . . .").  However, plaintiffs may be able to
bring a separate cause of action for piercing the corporate veil "when a judgment
already exists against a corporate entity."  *See Gallagher*, 315 Mich App. 647; *see
also Brennan*, 2012 WL 3888218, at *3 ("piercing the corporate veil is an equitable
remedy that provides a party with a means to impose liability on an underlying
cause of action") (internal citations omitted)).

      As piercing the corporate veil is a remedy rather than a pre-judgment cause
of action, and Plaintiffs do not allege that they already have a judgment against
Oakland Automation, Count X of both amended complaints fails to state a cause of

action upon which relief can be granted.  Therefore, the court **GRANTS** Defendant's

motions to dismiss as to Count X in both cases.  However, nothing in this decision,

which is limited to dismissing Count X as a separate cause of action, is intended to

preclude the possible future application of piercing the corporate veil as an

equitable remedy in the event that either plaintiff succeeds in obtaining a judgment

against any Defendant.  Because it is sufficient to dismiss the counts at this time,

the court declines to prejudge the issue of whether plaintiffs would ultimately

succeed on their alter ego/corporate veil piercing theory.

### B.   <u>Promissory Estoppel (Count III)</u>

Count III in both complaints alleges, in relevant part: (1) "Defendants made

clear and definite promises to [Plaintiffs], orally and by their conduct, that

[Oakland Automation] would, and could, timely compensate [Plaintiffs] for [their]

work on the Toyota Projects;" (2) "Defendants reasonably should have expected

their Promises to induce [Plaintiffs] to perform [] work" on the relevant projects; (3)

Plaintiffs "substantially relied on the[se] Promises by, *inter alia*, performing the

subject work;" (4) "Defendants failed to fulfill their Promises when they failed to

timely compensate [Plaintiffs] for [their] work," resulting in economic loss; and (5)

"The Promises must be enforced against Defendants to avoid injustice." *Seither &*

*Cherry*, ECF No. 31, PageID.433-34; *AP Electric*, ECF No. 32, PageID.263.  Under

Michigan law, the doctrine of promissory estoppel states: "[a] promise which the

promisor should reasonably expect to induce action or forbearance on the part of the

promisee or a third person and which does induce such action or forbearance is

binding if injustice can be avoided only by enforcement of the promise." *State Bank*

*of Standish v. Curry*, 442 Mich. 76, 83 (1993) (citing Restatement (Second) of Contracts § 90 (1981)). The Moving Defendants now argue Plaintiffs have failed to state a claim under Count III because they have failed to sufficiently allege the existence of a valid promise, and because there is a contract covering the same subject matter as this claim. *See Seither & Cherry*, ECF No. 37, PageID.563-64; *AP Electric*, ECF No. 39, PageID.364-65.

The doctrine of promissory estoppel defines a promise as "a manifestation of intention to act or refrain from acting in a specified way, so made as to justify a promise in understanding that a commitment has been made." *Id.* (citing Restatement (Second) of Contracts § 2 (1981)). Because Michigan courts cautiously apply promissory estoppel, they have held that not just any "promise" will satisfy the test. *Avertest, LLC, v. Livingston Cnty., Michigan*, No. 20-1858, 2021 WL 3702196, at *6 (6th Cir. Aug. 20, 2021). A promise must be both "definite and clear" and a party's reliance on it "must be reasonable." *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 280 Mich. App. 16, 41 (2008) (citing *Ypsilanti Twp. V. Gen. Motors Corp.*, 201 Mich. App. 128, 134 (1993)). "[S]tatements that are indefinite, equivocal, or not specifically demonstrative of an intention respecting future conduct cannot serve as the foundation for an actionable reliance." *Farrow Grp., Inc. v. Detroit Land Bank Auth.*, No. 351138, 2021 WL 70649, at *5 (Mich. Ct. App. Jan. 7, 2021) (citing *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 227 (2019) (quoting *State Bank of Standish*, 442 Mich. at 85-86)). To determine whether a promise exists, the court must look to the totality of the circumstances surrounding the relationship or transaction and "objectively evaluate . . . the parties' words, actions,

14

and relationship." *Id.* (citations omitted).  Michigan courts "will not enforce vague or general promises that require speculation about the promiser's actual duties under the promise." *Avertest, LLC*, 2021 WL 3702196, at *6.  Additionally, Michigan courts have held that, while plaintiffs may "bring alternative counts of breach of contract and implied contract[,]" a contract "cannot be implied in law while an express contract covering the same subject matter is in force between the parties." *H. J. Tucker & Assocs. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 573 (1999) (citing cases).

Plaintiffs argue their complaints "contain[] highly plausible facts that establish the clear and definite promises made by Moving Defendants" including promises "that [Oakland Automation would timely compensate [Plaintiff] for its work on the [relevant projects]" made through "Defendants' conduct and oral representations." *Seither & Cherry*, ECF No. 39, PageID.602; *AP Electric*, ECF No. 42, PageID.402-03.

The court disagrees.  It is true that Plaintiffs allege an express contract between Plaintiffs and Oakland Automation, but not necessarily one between Plaintiffs and each of the Moving Defendants, and therefore claims for alternative theories of implied contract could lie between Plaintiffs and the Moving Defendants. But Plaintiffs essentially argue that the Moving Defendants are liable on the promise made by contract with OA because at all relevant times Moving Defendants acted as, or effectively controlled, OA.  *E.g.*, *AP Electric*, ECF No. 32, PageID.257, ¶ 35.  This is evidenced by, for example, the fact that Plaintiffs do not allege any promise made by Moving Defendants to the Plaintiffs outside of the alleged contract

15

with OA itself.  *See generally id.*  But accepting as true that Moving Defendants at all times exercised complete control over OA, Plaintiffs' theory is not a promissory estoppel claim at all – it is a theory of remedy on a breach of contract claim.  *See, e.g., Herman v. Mobile Homes Corp.*, 317 Mich. 233, 246-47 (1947) (holding a parent company liable for breach of contract when it "directly intervene[d] in the management of its subsidiaries so as to treat them as mere departments of its own enterprise") (collecting cases).  It is well established that the gravamen of an action is determined by reading the claim as a whole, and looking beyond the label to determine the exact nature of the claim.  *David v. Sternberg*, 272 Mich. App. 377, 381 (2006) (citing *MacDonald v. Barbarotto*, 161 Mich. App. 542, 547 (1987), *Simmons v Apex Drug Stores, Inc*, 201 Mich. App. 250, 253 (1993)) (cleaned up).  As far as Plaintiffs' "alter ego" theory of promissory estoppel goes, it would simply establish that Moving Defendants are liable on OA's liability on a breach of contract, and in that scenario, implied contract claims would be barred when there is a contract covering the same subject matter.  *See H. J. Tucker & Assocs. v. Allied Chucker & Eng'g Co.*, 234 Mich. App. 550, 573 (1999).

But in the alternative, to the extent Plaintiffs do plead facts to make an independent claim for promissory estoppel, Plaintiffs provide no factual allegations of any "clear and definite" statement by the Moving Defendants which could have given rise to reasonable reliance that a commitment had been made.  The closest Plaintiffs get to alleging a specific statement – the only communication arguably *from the Moving Defendants* that Plaintiffs point to as proof of a promise (again, separate from the theory that Moving Defendants at all times controlled and acted

16

on behalf of OA) – is the following line at the bottom of the purchase order: "The above purchase order provides, 'By accepting this PO, vendor agrees to terms and conditions set forth by Oakland Industries; parent company to Oakland Automation, VSII, Autotac, and InterClean Equipment. Find General Terms and Conditions here: https://www.oaklandind.com/terms-and-conditions/.'" *AP Electric*, ECF No. 32, PageID.256, ¶ 32; *Seither & Cherry*, ECF No. 31, PageID.427, ¶ 32. Neither Complaint alleges that any particular term or condition would purport to create a promise between Plaintiffs and any Moving Defendant. Without more, that sentence alone cannot support a claim for promissory estoppel – for one, it provides no direction on what duties Moving Defendants have to Plaintiffs at all. But even accepting that it is plausible that Plaintiffs interpreted this sentence as Moving Defendants guaranteeing OA's promises, that interpretation does not rise to the level of reasonable, actionable reliance on a clear and definite promise.

Therefore, the court **GRANTS** Moving Defendants' Motions as to Count III in both Complaints.

### C.   Unjust Enrichment (Count IV)

Count IV in both complaints alleges: (1) "[w]ith the full knowledge of Defendants, [Plaintiffs] performed certain work" on the relevant projects; (2) Defendants received a benefit from [Plaintiffs], particularly where they received and/or benefited from [Plaintiffs'] performance of certain work" on the relevant projects; (3) "Defendants unjustly retained the above benefits . . . including payments received by [Oakland Automation] for [Plaintiffs' work];" and (4) "[i]t would be unjust and inequitable for Defendants to retain the above benefits without

17

[Plaintiffs] being properly compensated." *Seither & Cherry*, ECF No. 31, PageID.434; *AP Electric*, ECF No. 32, PageID.264.  Under Michigan law, a claim for unjust enrichment requires a plaintiff to show: "(1) the receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to the plaintiff because of the retention of the benefit by the defendant." *Barber v. SMH (US), Inc.*, 202 Mich. App. 366, 375 (1993) (citing *Dumas v. Auto Club Ins. Ass'n*, 437 Mich. 521, 546 (1991)).  "In other words, the law will imply a contract to prevent unjust enrichment only if the defendant has been unjustly or inequitably enriched at the plaintiff's expense." *Morris Pumps*, 273 Mich. App. at 195; *see also Wright v. Genesee Co.*, 404 Mich. 410, 419 (2019) ("Unjust enrichment . . . doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another's expense.").  The requirement that the benefit be received "from the plaintiff" means that it must be received *directly* from the plaintiff, "a benefit received indirectly is not enough." *Smith v. Glenmark Generics, Inc., USA*, No. 315898, 2014 WL 4087968, at *1 (Mich. Ct. App. Aug. 19, 2014) (citing *Karaus v. Bank of New York Mellon*, 300 Mich. App. 9, 22 (2012)) (emphasis in original).  Although Michigan courts have permitted unjust enrichment claims to proceed when a subcontractor indirectly conferred a benefit on a defendant by performing work projects, the Michigan Supreme Court has limited this exception to when the defendant and plaintiff had some sort of direct interaction (such as working on the defendant's building). *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017); *see Kammer Asphalt Paving Co. v. E. China Twp. Sch.*, 443 Mich. 176 (1993).

18

Defendants argue these claims should be dismissed for two reasons: (1) first, because "Plaintiff[s] allege[] the existence of an express contract between Plaintiff[s] and [Oakland Automation] that cover[] the subject matter purportedly at issue in this civil action;" and (2) "Plaintiff[s] fail[] to make any factual allegation regarding a purported benefit received by any of the Moving Defendants *from Plaintiff[s].* E.g.*, AP Electric*, ECF No. 39, PageID.368.

The court agrees with both points.  It is true, as above, that there is an express contract between Plaintiffs and <u>Oakland Automation</u> but not necessarily one between Plaintiffs and each of the Moving Defendants.  It could still be the case that APE and S&C provided some benefit to the moving Defendants and that the retention of that benefit by the Moving Defendants was unjust.  But in support of their count of unjust enrichment, Plaintiffs claim only that, "Defendants unjustly retained the above benefits of S&C's work on the Toyota Projects, including payments received by OA for S&C's work."  *Seither & Cherry*, ECF No. 31, ¶ 75; *AP Electric*, ECF No. 32, ¶ 75 (the same, but referring to "APE").

Plaintiffs' only specific factual argument on this count is that OA received the payments for Plaintiffs' work (and then, presumably, transferred any or all of that money to the Moving Defendants).  But accepting that as true, their claim is only that OA in some way misused the funds it was supposed to pay to Plaintiffs.  Plaintiffs' claims based on that allegation sound in the same breach of contract claim they make in Count I, and are therefore barred by the well-established principle that a contract will not be implied if there is an express contract covering the same subject matter.  *See Belle Isle Grill Corp. v. Detroit*, 256 Mich. App. 463,

19

478 (2003).  Meanwhile, beyond the conclusory statement that, "Defendants unjustly retained the above benefits of APE's work" (ECF No. 32, PageID.264), Plaintiffs do not allege any other specific facts that would show that the Moving Defendants directly received any benefit as a result of Plaintiffs' work, or even that Plaintiffs directly interacted with Moving Defendants at all.  *See Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 618 (E.D. Mich. 2017).

The court therefore **GRANTS** both of Moving Defendants' Motions as to Counts IV for unjust enrichment.

### D.   <u>Fraud (Count V)</u>

Count V in both complaints alleges, in relevant part, that "[p]rior to submitting its purchase orders and entering into the Subject Contracts, Defendants knew that OA was undercapitalized," "lacked the capacity to comply with its obligations pursuant to the Subject Contracts," and could not timely pay the Plaintiffs for their work on the relevant projects.  *Seither & Cherry*, ECF No. 31, PageID.435; *AP Electric*, ECF No. 32, PageID.264.  However, despite this knowledge, the Defendants allegedly "represented to [Plaintiffs] that they had the capacity and ability to compensate [Plaintiffs]" for their work on the relevant projects.  *Seither & Cherry*, ECF No. 31, PageID.435; *AP Electric*, ECF No. 32, PageID.265.  Plaintiffs claim that these representations, which Defendants knew were false, were made to induce Plaintiffs to enter into the Subject Contracts and did, in fact, induce Plaintiffs to enter into the Subject Contracts and perform work on the relevant projects.  *Id.*

Under Michigan law, a plaintiff asserting a claim of fraud must demonstrate six elements: "(1) that the defendant made a material representation; (2) that it was false; (3) that the defendant made the representation knowing that it was false or made it recklessly without knowledge of its truth; (4) that the defendant intended that the plaintiff would act on the representation; (5) that the plaintiff relied on the representation; and (6) that the plaintiff suffered injury as a result of having relied on the representation." *Lucas v. Awaad*, 299 Mich. App. 345, 363 (2013) (citing *Cooper v. Auto Club Ins. Ass'n*, 481 Mich. 399, 408 (2008)). Further, when alleging fraud in a federal complaint, a party must state "with particularity" the circumstances constituting the fraud. Fed. R. Civ. P. 9(b). Federal Rule of Civil Procedure 9(b) has been interpreted to require a complaint to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *JAC Holding Enterprises, Inc. v. Atrium Cap. Partners, LLC*, 997 F. Supp. 2d 710, 726 (E.D. Mich. 2014) (citing *Indiana State Dist. Council of Laborers and Hod Carriers Pension and Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009) (quotation marks and citation omitted)).

However, the court must nevertheless "factor in the policy of simplicity in pleading which the drafters of the Federal Rules codified in Rule 8." *Id.* (citing *Whalen v. Stryker, Corp.*, 783 F. Supp. 2d 977, 982 (E.D. Ky. 2011) (quoting *Michaels Building Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)); *see also United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) ("Rule 9(b) is not to be read in isolation, but is to be

interpreted in conjunction with Federal Rule of Civil Procedure 8.").  As such, a court must determine only whether the Plaintiff has "ple[d] sufficient detail – in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud – to allow the defendant to prepare a responsive pleading."  *Id.* (citing *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008)).

The Moving Defendants now argue that Plaintiffs have failed to plead fraud with sufficient particularity for four key reasons: (1) "First, Plaintiff does not identify the alleged speaker and, instead, repeatedly refers generally to 'Defendants;'" (2) "Second, Plaintiff does not specify the statement or statements that Plaintiff contends were fraudulent;" (3) "Third, Plaintiff does not include any factual allegation regarding when the alleged statements were made;" and (4) "Fourth, Plaintiff does not explain why the alleged statement[s] were fraudulent." *Seither & Cherry*, ECF No. 37, PageID.568; *AP Electric*, ECF No. 39, PageID.369.

The court agrees that Plaintiffs' allegations as to fraud are not plead with specificity as to the Moving Defendants.  While the Complaints implicitly allege that Oakland Automation represented to Plaintiffs that it would timely pay them for their work, the Complaints do not lay out specific statements from the *Moving Defendants* that would constitute fraud.  Similarly, as far as Plaintiffs appear to allege that certain individuals made false statements, no specific statement is identified.  *See, e.g.*, *AP Electric*, ECF No. 32, ¶ 34, 37, 39.  As discussed in relation to Plaintiffs' promissory estoppel claim, *see* Section III.B, the only Moving Defendant who plausibly made any kind of statement to Plaintiffs is OIL, in the

form of the terms and conditions disclaimer found at the bottom of the purchase

order.  *See, e.g.*, *AP Electric* ECF No. 32, ¶ 32.  But as previously explained,

Plaintiffs do not allege any specific statement in that disclaimer – or for that matter

within the terms and conditions themselves – that makes a fraudulent, material

representation on which Plaintiffs relied.  Without a specific promise on which

Plaintiffs could rely, Plaintiffs do not sufficiently allege fraud by any of the Moving

Defendants because they can meet neither the first and fourth pleading

requirements of fraud under Rule 9(b) nor the first element of fraud under Michigan

law.  The court therefore **GRANTS** Moving Defendants' Motions as to Count V in

both cases.

### E.   Violation of Michigan's Uniform Voidable Transactions Act (Count VI)

Count VI of both complaints alleges all of the Defendants violated the

Michigan Uniform Voidable Transactions Act ("MUVTA"), Mich. Comp. Laws §

566.31 *et seq.*  *Seither & Cherry*, ECF No. 31, PageID.436-37; *AP Electric*, ECF No.

32, PageID.266-67.  Specifically, Plaintiffs allege "[OIB], Interclean, and OIL

received transfers of assets, value or monies from [Oakland Automation] and/or

Autotac, while [Oakland Automation] and Autotac were insolvent, and with intent

to hinder, delay, and defraud the debtholders of the consolidated company, Oakland

Industries, including [Plaintiffs]."  *Id.*  The MUVTA was "designed to prevent

debtors from transferring their property in bad faith before creditors can reach it."

*Dillard v. Schlussel*, 308 Mich. App. 429, 446 (2014).  Specifically, MUVTA permits

a creditor to void a fraudulent disposal of property belonging to a person who is

liable on a claim.  Mich. Comp. Laws § 566.37; *see also Helena Agri-Enterprises,*
*LLC v. Great Lakes Grain, LLC*, 988 F.3d 260, 268 (6th Cir. 2021) (citing *Swirple v.*
*MGM Grand Detroit, LLC,* No. 345284, 2020 WL 561904, at *2-3 (Mich. Ct. App.
Feb. 4, 2020) (per curiam)).

The Moving Defendants now argue that Plaintiff's claims are deficient
because: (1) "even if Plaintiff did adequately plead a transfer from Oakland
Automation to one of the Moving Defendants, Oakland Automation is not a 'debtor'
under the MUVTA until it is 'actually liable for the claim;'" and (2) they make only
"general, non-specific allegations regarding purported transfers from one of the
bankrupt entities to the Moving Defendants," which is insufficient to state an
intentional fraudulent transfer claim.  *AP Electric*, ECF No. 39, PageID.370-71;
*Seither & Cherry*, ECF No. 37, PageID.569-70.  The court addresses each of these
arguments in turn.

　　　　　*i.　　Oakland Automation's status as a "debtor" under MUVTA*

MUVTA states that "a transfer made or obligation incurred by a debtor is
voidable as to a creditor," under specific circumstances.  Mich. Comp. Laws §
566.34(1).  "'Creditor' means a person that has a claim." Mich. Comp. Laws §
566.31(d).  "'Claim', except as used in 'claim for relief', means a right to payment,
*whether or not* the right is reduced to judgment, liquidated, unliquidated, fixed,
contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or
unsecured."  Mich. Comp. Laws § 566.31(c) (emphasis added).  *Morland Prop.*
*Servs., LLC v. J.J. Dev., Inc.*, No. 363581, 2024 Mich. App. LEXIS 262, at *17-18
(Mich. Ct. App. Jan. 11, 2024).  However, the transferor must actually be liable for

the claim to be a "debtor."  *Mather Inv'rs, LLC v. Larson*, 271 Mich. App. 254, 259 (2006).

Moving Defendants' argument on this point is that Plaintiffs have not sufficiently alleged that OA is a "debtor" with an adjudicated liability on Plaintiffs' claims.  *AP Electric*, ECF No. 43, PageID.418-19.  However, their argument that OA's liability must be adjudicated before this claim can proceed is at odds with the text of MUVTA, which does not require a prior judgment in order to establish that a debtor was liable on a claim at the time they made the transfer.  Mich. Comp. Laws § 566.31(c).

For their claim that a prior adjudication is necessary to proceed on a MUVTA claim, Moving Defendants rely on *Mather Invs., LLC v. Larson*, 271 Mich. App. 254 (2006).  But *Mather* does not provide the support they claim.  In that case, a woman owed a nursing home roughly $53,000 from her stay there.  Rather than pay the nursing home as required under her contract with them, she allegedly transferred all her assets (about $63,000) to the defendant, Larson.  The operator of the home, Mather Investors, sued Larson directly to void the transfer and recover the woman's money.  Absent from the case was the woman herself, who had died before she could be served.  The court concluded that transferees like Larson *are* proper parties under MUVTA; "The judgment may be entered against . . . [t]he first transferee of the asset or the person for whose benefit the transfer was made."  *Id.* at 256 (quoting Mich. Comp. Laws § 566.38(2)(a)).  But the woman was not a party to the action, and Larson was not the "debtor" under the statute (the woman was).  The court held that it could not properly adjudicate whether the woman was liable on

25

the contract because a "transferor's 'presence in the action is essential to permit the court to render complete relief . . .'" and determine liability. *See* 271 Mich. App. at 259-60 (quoting Mich. Ct. R. 2.205(A)). So when that court said that "the transferor must actually be liable" for a MUVTA claim to proceed, they meant that the transferor's liability must be capable of being adjudicated, and for that question to be properly adjudicated the transferor must be a party to the action that determines liability. *See id.* at 259.

Thus, consistent with *Mather*'s reasoning and MUVTA's text, while a debtor's liability to a creditor requires some kind of adjudication in order for a MUVTA violation to stand, that adjudication need not have taken place before the alleged transfer in order for liability to have attached for purposes of the statute. *See id.* (dismissing for lack of joinder, not for lack of prior adjudication on the merits); Mich. Comp. Laws § 566.31(c). The issue in *Mather* was not that Plaintiffs had failed to rush to court to get a judgment on their contract with the woman before she transferred her assets; the issue was that the woman was not later able to contest her liability on the contract in the suit. But here, Plaintiffs have joined both the alleged "debtor" (OA), as well as the alleged transferees (Moving Defendants) who allegedly hold an interest in the assets they seek. *See, e.g., AP Electric*, ECF No. 32, ¶¶ 92 ("OA and Autotac transferred property, funds, assets or value to OIB, Interclean, and OIL"). All necessary parties are present, and among their claims, Plaintiffs seek to establish OA's liability on its alleged debts to them. While Plaintiffs must prove that liability in order to ultimately succeed on any of their MUVTA claims, their pleadings are sufficient at this juncture.

26

ii.   *Whether Plaintiffs have met their burden of pleading for a*
      *MUVTA violation*

MUVTA provides for two types of fraudulent transfers: those with fraudulent

intent (Mich. Comp. Laws § 566.34(1)(a)) and those which are "constructively"

fraudulent (Mich. Comp. Laws § 566.35(1)).  *Dillard v. Schlussel*, 308 Mich. App.

429, 433 (2014).  The first encompasses transfers made with actual intent to hinder,

delay, or defraud a creditor and applies to transfers made either before or after the

creditor's claim arose.  *Id.*; Mich. Comp. Laws § 566.34(1)(a).  The second, commonly

called "fraud in law" or constructive fraud, deems certain transactions fraudulent

regardless of the creditor's ability to prove the debtor's actual intent.  It applies only

to transfers made after the creditor's claim arose.  Mich. Comp. Laws § 566.35(1).

Three elements of proof are required: (1) that the creditor's claim arose before the

transfer, (2) the debtor was insolvent or became insolvent as a result of the transfer,

and (3) the debtor did not receive reasonably equivalent value in exchange for the

transfer.  *Dillard*, 308 Mich. App. at 433.

When a plaintiff's intentional fraudulent transfer claim is premised on a

debtor's actual intent to defraud, Rule 9(b) applies, and "the plaintiff must plead the

'circumstances constituting fraud' with particularity."  *Gold v. Winget* (*In re NM*

*Holdings Co., LLC*), 407 B.R. 232, 261 (Bankr. E.D. Mich. 2009).  A plaintiff must

plead the date of the transfer, the amount of the transfer (or if the transfer was of

property other than money, the property that was transferred and its value), the

name of the transferor, the name of the initial transferee, and the consideration

paid, if any, for the transfer.  *Gold*, 407 B.R. at 261.  "However, Rule 9(b)'s

requirement is not intended to be an insurmountable hurdle for claimants to overcome; the complaint must give the party adequate notice of the charges--it need not marshal [sic] all of the evidence against him." *Sharp v. Chase Manhattan Bank USA, N.A.* (*In re Commercial Fin. Servs., Inc.*), 322 B.R. 440, 448 (Bankr. N.D. Okla. 2003) (internal quotation marks and citations omitted). When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein. *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

The court agrees that the amended Complaints, on their text alone, sit in that blurry space that may or may not reach the requisite "particularity" required by Rule 9(b). To the extent that they do allege particular transfers, they claim three alleged transfers: 1) assets, equipment, and tools of VS II (allegedly owned by OA) to InterClean; 2) assets, equipment, and tools of Autotac to InterClean; and 3) transfers of "Capital Call Funds" between OIB and the Moving Defendants. Neither of the latter two alleged transfers appear to involve Oakland Automation, the party whose insolvency allegedly harmed Plaintiff. The first, however, involves assets which allegedly belong to OA.

The court also considers the exhibits which have been attached to Plaintiffs' supplemental briefing, *see Bassett*, 528 F.3d 426, which indicate transfers from OA itself to OIL during the relevant periods which, although not complete proof in of themselves, lend the requisite particularity to Plaintiffs' claims that Defendants

28

were fraudulently transferring OA's assets to Moving Defendants with the intent to hinder creditors such as Plaintiffs. *E.g.*, *AP Electric*, ECF 50-7, PageID.611 (showing, for example, transfers from OA to OIL in March through June 2023 totaling over $1,000,000). Their allegations, with these attachments, are specific enough to give notice to Moving Defendants about the charges being brought against them and satisfy Rule 9(b). Thus, unlike Plaintiffs' general fraud claim, their claim under MUVTA of a transfer made with fraudulent intent is pled with sufficient particularity.

Independently of Plaintiffs' claim of fraudulent intent under Mich. Comp. Laws § 566.34(1)(a), Plaintiffs do not have to plead an insolvency transfer under Mich. Comp. Laws § 566.35(1) with the same specificity. Plaintiffs have made clear that they allege both kinds of transfers. *See AP Electric*, ECF No. 50, PageID.505. When a plaintiff alleges that a debtor transferred property to hinder or delay a creditor, but does not allege an actual intent "to defraud" a creditor, the claim is not one of actual fraud. In this second type of transfer (a claim of so-called "constructive fraud" or an insolvent transfer under Mich. Comp. Laws § 566.35(1)), Rule 9(b) does not apply, and a plaintiff's complaint need only satisfy the pleading requirements under Rule 8(a). 407 B.R. at 261.

For that claim as well, Plaintiffs have met their burden. As described above, they have alleged a number of transfers from OA to some or all of the Moving Defendants, that these were done while OA was insolvent, that OA received no reasonably equivalent value in consideration of those transfers, and that Plaintiffs' claims arose before the transfers occurred. The court similarly takes into account

29

the exhibits attached to Plaintiffs' supplemental briefing which allege specific transfers from OA to OIL while OA was allegedly insolvent, in addition to those transfers involving OA which are specified in the pleadings. *E.g.*, *AP Electric*, ECF 50-7, PageID.611. Although Plaintiffs identify some particular transfers that do not appear to involve OA at all and therefore may be of doubtful significance, their allegations contain sufficient alleged facts about other transfers from OA to Moving Defendants that they nonetheless have met their burden at this stage. Plaintiffs are at least entitled to investigate further.

The court therefore **DENIES** Moving Defendants' Motions as to Count VI in both Complaints.

### F.   Violation of Michigan's Building Contract Fund Act (Count VII)

In *AP Electric*, Count VII alleges: "[a]t the direction, and with full knowledge, of Defendants, APE performed certain work on the Toyota Projects that was accepted by [Oakland Automation], under the direction and control of OIL and/or OIB." *AP Electric*, ECF No. 32, PageID.269; *see Seither & Cherry*, ECF No. 31, PageID.440. The work was, specifically, supplying and installing robotics equipment in Toyota plants. *See AP Electric*, ECF No. 32-2, PageID.280; *Seither & Cherry*, ECF No. 31-2, PageID.474. Plaintiffs further alleges, "[Toyota] paid [Oakland Automation], OIL, and/or OIB for the labor and/or materials necessary to complete the above Toyota Projects" and "those monies were to be held in trust by [Oakland Automation], OIL, and/or OIB to assure payments to APE and other subcontractors who performed work on the above Toyota Projects for [Oakland Automation]." *See AP Electric*, ECF No. 32-2, PageID.270; *Seither & Cherry*, ECF

No. 31, PageID.440.  However, Plaintiffs allege that Oakland Automation, OIL,

and/or OIB breached and violated the above trust by "retaining or using those

monies for purposes other than to first pay laborers, subcontractors, or materialmen

engaged by [Oakland Automation] OIL, and/or OIB to perform labor on (or furnish

material for) the Toyota Projects, including S&C."  *See AP Electric*, ECF No. 32-2,

PageID.270; *Seither & Cherry*, ECF No. 31, PageID.440.

The Michigan Building Contract Fund Act, otherwise known as the

"Michigan Builders Trust Fund Act" ("MBTFA"), "prohibits a building contractor [or

subcontractor] from retaining or using construction payments from a particular

project until all laborers, subcontractors, and materialmen who worked on the

project have been paid."  *People v. Brown*, 239 Mich. App. 735, 738 (2000).  Section 1

of the MBTFA provides:

> In the building construction industry, the building
> contract fund paid by any person to a contractor, or by
> such person or contractor to a subcontractor, shall be
> considered by this act to be a trust fund, for the benefit of
> the person making the payment, contractors, laborers,
> subcontractors or materialmen, and the contractor or
> subcontractor shall be considered the trustee of all funds
> so paid to him for building construction purposes.

Mich. Comp. Laws § 570.151.  To state a prima facie claim under the MBTFA, a

party must show: "(1) the defendant is a contractor or subcontractor[5] engaged in the

building construction industry, (2) a person paid the contractor or subcontractor for

labor or materials provided on a construction project, (3) the defendant retained or

---

[5] The statute does not explicitly define "contractor" or "subcontractor."

used those funds, or any part of those funds, (4) for any purpose other than to first pay laborers, subcontractors, and materialmen, (5) who were engaged by the defendant to perform labor or furnish material for the specific project." *Id.* (citing *DiPonio Const. Co. v. Rosati Masonry Co.*, 246 Mich. App. 43, 49 (2001)).

First, the court finds that the MBTFA covers the work Plaintiffs performed. Few Michigan courts directly address the question of what exactly is covered under the term "building construction industry" in the MBTFA. Thus, exactly when a project crosses the line from "building construction" to something else not covered by the MBTFA is unclear. Is it no longer "building construction" when the structure is complete? If electrical, plumbing, and flooring are covered by the statute, what about painting? Installing appliances? Does the type of building matter? In a factory setting, as in this case, does the term only cover the bare "essentials" of floor, walls, and ceiling, or can it encompass more?

The primary case analyzing the scope of the MBTFA that this court has been able to identify is *Allied Mech. Servs. v. DR&W Eng'g & Design, Inc.*, an unpublished opinion of the Michigan Court of Appeals. *See Allied Mech. Servs.*, No. 266165, 2007 LEXIS 811 (Mich. Ct. App. Mar. 22, 2007). That case held that an "improvement," as defined by the Michigan Construction Lien Act ("MCLA"), is also covered under the MBTFA. An "improvement" is defined as "the result of labor or material provided by a contractor, subcontractor, supplier, or laborer, including, but not limited to, surveying, engineering and architectural planning . . . , erecting, . . . altering, . . . or installing or affixing a fixture or material, pursuant to a contract." Mich. Comp. Laws § 570.1104(7). In that case, a project which involved surveying

an existing compressed air piping system, testing for leaks, identifying the leaks and creating drawings for the system was an "improvement" under the MCLA and covered under the MBTFA.  However, because that decision is non-binding, the court also looks to the kinds of projects to which the statute has been applied.  *See, e.g.*, *Nat'l Bank of Detroit v. Eames & Brown*, 396 Mich. 611, 616 (1976) (plumbing and electrical repair work and materials); *Andy J. Egan Co. v. Pro Servs.*, No. 336358, 2018 Mich. App. LEXIS 2666, at *15 (Ct. App. June 19, 2018) (pipe installation and materials); *Windrush Inc. v. Vanpopering*, No. 315958, 2015 Mich. App. LEXIS 1703, at *14 (Ct. App. Sep. 10, 2015) (supply and install ceramic tile). Another court has specifically held that, "nothing in the statute or in caselaw that would support a conclusion that the term 'building construction industry' as used in the Act was intended only to apply to new construction."  *Lee Wholesale Supply, Inc. v. Yacos* (*In re Yacos*), 370 B.R. 131, 2007 Bankr. LEXIS 2141 (Bankr. E.D. Mich. 2007) (roofing and gutter repair).

When interpreting a statute, a court's "primary goal is to ascertain and give effect to the Legislature's intent."  *Tomecek v Bavas*, 482 Mich. 484, 495-496 (2008). "If the statute's language is clear and unambiguous, we assume that the Legislature intended its plain meaning, and we enforce the statute as written."  *South Haven v. Van Buren Co Bd of Comm'rs*, 478 Mich. 518, 528 (2007) (quotation marks and citations omitted).  However, if the statute's language is ambiguous, a court "may refer to the history of the legislation in order to determine the underlying intent of the Legislature."  *Luttrell v. Dep't of Corrections*, 421 Mich. 93, 103 (1984).  Case law interpreting the legislative history of the MBTFA is sparse.  *Performance*

*Contracting, Inc. v. Dynasteel Corp.*, 750 F.3d 608, 612 (6th Cir. 2014) (applying the statute to a project for manufactured ductwork); *see also B. F. Farnell Co. v. Monahan*, 377 Mich. 552, 557 (1966) (holding that debts under the Act survive bankruptcy proceedings).  But an earlier opinion of the Sixth Circuit provides perhaps the most thorough explanation of the legislative purpose of MBTFA, noting:

> During the boom period of the 1920's, speculative builders often undertook to construct projects too large for their available capital to finance, and they frequently paid suppliers and materialmen on older projects with funds received as payment on more current operations. With the advent of the crash of 1929 and the consequent widespread insolvency of many building contractors, these pyramided empires also collapsed and many subcontractors and suppliers were never paid. Subcontractors and materialmen on private projects were left only with mechanics' liens as remedies, and these were often ineffective. On the other hand, suppliers of labor and material on public projects were protected by statutorily required payment and performance bonds.

*Gen. Ins. Co. of Am. v. Lamar Corp.*, 482 F.2d 856, 860 (6th Cir. 1973) (holding that the MBTFA applied only to private projects).

Without drawing a bright-line, the court reads these scattered decisions, the application of the MBTFA to "improvements" in *Allied Mech. Servs.*, No. 266165, 2007 LEXIS 811 (Mich. Ct. App. Mar. 22, 2007), and the limited available legislative history describing the protective purposes of the Act, to conclude that the term "building construction industry" is not meant to be read so narrowly as tohe exclude from its protection subcontractors who install large, industrial robotics fixtures in a vehicle manufacturing plant.

Having found that the statute applies to this case as a whole, the court must still determine if the Moving Defendants, not just OA, can plausibly be liable under the facts alleged in the Complaints.  The Complaints allege that either OA, OIL and/or OIB was paid for the labor and materials on the TMMI project.  While it may turn out that none of the Moving Defendants ever received funds directly from TMMI (rather than being paid to OA), at this stage the court must accept these allegations as true.  *See Seither & Cherry*, ECF No. 31, PageID.440; *AP Electric*, ECF No. 32-2, PageID.270.[6]  If Plaintiffs prove that either one of those Moving Defendants received those funds, whoever received the funds – which were, at least in part, intended to pay Plaintiffs for products and services provided on TMMI's behalf pursuant to the contracts between Plaintiffs and OA – would be treated as a contractor under the MBTFA required to hold those funds in trust for Plaintiffs.[7]

Therefore, the court **DENIES** Moving Defendants' Motions as to Counts VII.

## G.    Conversion (Counts VIII and IX)

---

[6] At other points in the Amended Complaints, Plaintiffs indicate that only Oakland Automation was paid by Toyota.  *See, e.g.*, Counts VIII and IX.  These are inconsistent pleadings, but at this stage, the court accepts the version contained in this count alone.

[7] Although not at facially at issue in the pleadings, recipients of trust funds may be proper parties under certain conditions as well: "[A]n entity or party claiming the status of a trust beneficiary can collect trust property from a transferee of the trustee only if three separate factors are established: the property transferred must in fact be trust property; the transferee must not be a bona fide purchaser for value; and the transferee must still be in possession of the trust property." *Openings v. Fifth Third Bank*, No. 14-07940-CZB, 2016 Mich. Cir. LEXIS 151, *10 (Mich. Cir. Ct. 2016) (quoting *In re Williams Brothers Asphalt Paving Co*, 59 B.R. 71, 75 (Bankr. W.D. Mich. 1986)).

Plaintiff S&C alleges "[Toyota] paid [Oakland Automation] for labor and/or materials provided in the Toyota Projects," "[Oakland Automation was wholly controlled and directed by OIL at the time [Oakland Automation] received the above payments from [Toyota]," and "[Oakland Automation, OIL, and/or Interclean took the money paid by [Toyota] to [Oakland Automation] meant to pay the Toyota Projects' subcontractors, such as S&C, and rather than utilizing the money to pay S&C, converted those funds for [Oakland Automation, OIL, and/or Interclean's own use." *Siether & Cherry*, ECF No. 31, PageID.441.  Plaintiff AP Electric alleges "TMMI paid [Oakland Automation] for labor and/or materials provided in the TMMI Project," "[Oakland Automation was wholly controlled and directed by OIL and [OIB] at the time [Oakland Automation] received the above payments from TMMI," and "OIL, [OIB], and/or Interclean took the money paid by TMMI to [Oakland Automation] meant to pay the TMMI Project's subcontractors, such as [AP Electric], and rather than utilizing the money to pay [AP Electric], converted those funds for OIL, [OIB], and/or Interclean's own use." *AP Electric*, ECF No. 32, PageID.271.

Michigan's conversion statute, Mich. Comp. Laws § 600.2919a, states:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
> (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property

> knew that the property was stolen, embezzled, or
> converted.

Mich. Comp. Laws § 600.2919a.  Like common law conversion, statutory conversion

cannot be established by merely alleging a defendant retained money lawfully given

to them.  *1st State Title v. LP Recordings, LLC*, No. 322964, 2015 WL 7750927, at *3

(Mich. Ct. App. Dec. 1, 2015) (citing *Lawsuit Fin., LLC*, 261 Mich. App. at 592-93)

("Likewise, statutory conversion cannot be established merely by retaining money,

which is all plaintiff asserts that defendants did.").  Rather, a plaintiff must show

the defendant had an affirmative "obligation…to return the specific money"

entrusted to their care.  *1st State Title*, 2015 WL 775027, at *3 (citing *Alfred

Shrimpton & Sons v. Culver*, 109 Mich. 577, 580 (1896)).  It is not necessary that

the money should be specifically earmarked; for example, an action for conversion

lies where a party cashes a check and retains the full amount of the check when he

is entitled to only a portion of that amount.  *See Citizens Ins. Co. v. Delcamp Truck

Ctr., Inc.*, 178 Mich. App. 570, 575 (1989).

Plaintiffs' claims for common law conversion are essentially identical to their

claims for statutory conversion, except they allege "[t]he money paid by

[Toyota/TMM] was entrusted to [Oakland Automation's] care and carried the

specific obligation to return to contractors who performed work" on the relevant

projects, such as Plaintiffs.  *Seither & Cherry*, ECF No. 31, PageID.442; *AP Electric*,

ECF No. 32, PageID.272.  Under Michigan law, common law conversion requires "a

distinct act of dominion wrongfully exerted over another's personal property in

denial of or inconsistent with his rights therein."  *Citizens Ins. Co. of Am. v.*

*Delcamp Truck Ctr., Inc.*, 178 Mich. App. 570, 575 (1989) (citing *Nelson & Witt v. Texas Co.*, 256 Mich. 65, 70 (1931)).  The difference between common law and statutory conversion is mainly that the statutory claim requires an additional element that the converted property be either converted for the party's "own use" and/or that the recipient knows that the property was converted.  *See* Mich. Comp. Laws § 600.2919a.

The Moving Defendants argue "Plaintiff[s'] only claim is that Oakland Automation did not pay Plaintiff for services or materials Plaintiff allegedly provided to Oakland Automation.  Plaintiff alleges no other separate and distinct duty with regard to the Moving Defendants that would state a claim upon which relief may be granted."  Additionally, they argue "Plaintiff repeatedly alleges that there existed a contract regarding the subject matter of [their complaint], without alleging any duty separate and distinct from that contract.  Therefore, Plaintiff cannot maintain an action in tort."

Moving Defendants' argument appears to be an appeal to the so-called economic loss doctrine, adopted by the Michigan Supreme Court in *Neibarger v Universal Coops, Inc*, 439 Mich 512, 527-528 (1992), to dispose of tort claims arising from contractual disputes. The court has relied on the doctrine to explain that "an action in tort may not be maintained where a contractual agreement exists, unless a duty, separate and distinct from the contractual obligation, is established."  *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 52 (2002).  These cases specifically refer to recovering lost property from the same defendant who also was allegedly in breach of contract.  *E.g.*, *IPS Contracting, Inc. v. Rivian Auto.,*

*LLC*, No. 21-10983, 2021 U.S. Dist. LEXIS 203747, at *13 (E.D. Mich. Oct. 22, 2021) (noting that the Defendant's taking of the property at issue was no different from the Defendant being in breach of contract).  Notably, some courts have held that the doctrine only applies to transactions involving the sale of goods, not services. *Cargill, Inc. v. Boag Cold Storage Warehouse, Inc.*, 71 F.3d 545, 550 (6th Cir. 1995) (agreeing with the district court that the economic loss doctrine only applies in situations involving the sale of goods); *see also Citizens Ins. Co. of Am. v. Prof'l Temperature Heating & Air Conditioning Inc.*, No. 300524, 2012 Mich. App. LEXIS 2140, 2012 WL 5290289, at *4 (Mich. Ct. App. Oct. 25, 2012) (per curiam) ("[T]he economic loss doctrine would not preclude an action in tort arising from a transaction in services, because these transactions are not governed by Article 2 of the UCC.") (citing *Neibarger*, 486 N.W.2d at 621).  Because the contract at issue here does not involve the sale of goods, the economic loss doctrine is no barrier to Plaintiff's conversion claims.

But even if the economic loss doctrine were a barrier to Plaintiffs' conversion claims, Moving Defendants are not entitled to dismissal.  If, as Moving Defendants argue, there is in fact no contractual obligation between the Moving Defendants and Plaintiffs, then Moving Defendants' duty to return those monies allegedly fraudulently given to them is a separate and distinct duty from OA's own contractual duty.[8]  *See* 18 Am. Jur. 2d Conversion § 57 ("Where property is

---

[8] As far as this theory of liability may be inconsistent with others of Plaintiffs' various counts, there is no requirement that their theories of liability be consistent with one another.  Fed. R. Civ. P. 8(d)(3).

fraudulently converted and diverted from its proper use, a third person into whose hands such property falls . . . has an obligation to restore it to the rightful owner."). By pleading conversion claims, Plaintiffs effectively allege alternative theories of liability for Moving Defendants separate from liability that might arise under contract.  For example, as explained in Section III.F, Plaintiffs have plausibly alleged that the Moving Defendants had a duty under the MBTFA to retain any funds received from TMMI in trust for Plaintiffs.  That is, itself, a separate and distinct duty from any contractual duty that might exist, and that distinct duty grounds a conversion claim.  *See Int'l Indus. Contracting Corp. v. Sofir Italia s.r.l.*, No. 16-cv-13168, 2017 U.S. Dist. LEXIS 130395, at *25 (E.D. Mich. Aug. 16, 2017) (holding that the MBTFA is a "separate and distinct" duty supporting a conversion claim); *Windrush Inc. v. Vanpopering*, No. 315958, 2015 Mich. App. LEXIS 1703, at *21 (Ct. App. Sep. 10, 2015) ("[W]e conclude that an action for statutory conversion may be maintained for a violation of the MBTFA.").  Plaintiffs have further alleged that the Moving Defendants received the funds rightfully owed to Plaintiffs with the knowledge that those funds were wrongfully kept from Plaintiffs.  *See, e.g.*, *AP Electric*, ECF No. 32, ¶ 33.  That is sufficient to state a plausible cause of action for both statutory and common law conversion.

Therefore, the court **DENIES** Moving Defendants' Motions as to Counts VIII and IX.

### H.   <u>Conspiracy (XI)</u>

Finally, Count XI of Plaintiffs' complaints for Civil Conspiracy alleges "Defendants combined and entered into a conspiracy to engage in the above acts,

which combination and conspiracy they carried out, causing harm and injury to

[Plaintiffs]." *Seither & Cherry*, ECF No. 31, PageID.444; *AP Electric*, ECF No. 32,

PageID.32.  In their allegations, Plaintiffs also allege that, "Defendants' above

comingling and materially combining their business operations and funds was done

with the purpose of deceiving and fraudulently inducing third parties, including

S&C, into entering into contracts with OA, and performing services or payments,

that OA and Defendants knew neither OA nor Defendants would perform as

promised, enriching and benefiting

Defendants." *Seither & Cherry*, ECF No. 31, ¶ 33.  A civil conspiracy is "a

combination of two or more persons, by some concerted action, to accomplish a

criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or

unlawful means." *Advoc. Org. for Patients & Providers v. Auto Club Ins. Ass'n*, 257

Mich. App. 365, 384 (2005) (citing *Admiral Ins. Co. v. Columbia Cas. Ins. Co.*, 194,

Mich. App. 300, 313 (1992)).  Under Michigan law, "a claim for civil conspiracy may

not exist in the air; rather, it is necessary to prove a separate, actionable tort."  *Id.*

(citing *Early Detection Center, PC v. New York Life Ins. Co.*, 157 Mich. App. 618, 632

(1986)).

Here, the Moving Defendants argue "Plaintiffs' [complaints] fail[] to state any

claim in tort upon which relief can be granted and, therefore, Count IX alleging

conspiracy must be dismissed."  *Seither & Cherry*, ECF No. 37, PageID.574; *AP

Electric*, ECF No. 39, PageID.375.   Other than disputing that Plaintiffs'

"conclusory" recitation of the alleged underlying torts of fraud, MUVTA violations,

and MBTFA violations constitute sufficient factual allegations, Moving Defendants

make no other arguments as to the sufficiency of Plaintiffs' arguments and whether they have plead the elements of civil conspiracy. *E.g.*, *AP Electric*, ECF No. 51, PageID.677.  The court finds this argument undeveloped. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citations omitted).

Further, as described above, in the instant order the court dismisses Plaintiffs' fraud allegations (Count V), but does not dismiss either Plaintiffs' allegations of MUVTA (Count VI) and MBTFA (Count VII) violations or of statutory and common law conversion (Counts VIII and IX).  Because those claims survive and constitute independent wrongs, and because Plaintiffs have plausibly alleged that Defendants comingled and combined their operations and funds "with the purpose of deceiving and fraudulently inducing third parties," including S&C and APE, into entering into contracts with OA, Plaintiffs have set forth sufficient facts to state a claim for civil conspiracy. *See Warchol v. Dynamic Control Int'l*, Nos. 322029, 322033, 2015 Mich. App. LEXIS 1934, at *19 (Ct. App. Oct. 20, 2015) (applying civil conspiracy to MUVTA violation); *Livonia Bldg. Materials Co. v. Harrison Constr. Co.*, 276 Mich. App. 514, 519 (2007) (treating a violation of the MBTFA as a tort).  The court therefore **DENIES** Moving Defendants' Motions as to Count XI in both cases.

## IV.   CONCLUSION

For the reasons described in the above opinion, the court **GRANTS** Moving Defendants' Motions to Dismiss in both *AP Electric* and *Seither & Cherry* as to

Counts III, IV, V, and X, but **DENIES** the Motions as to Counts VI, VII, VIII, IX, and XI.

      **SO ORDERED**.

Date: October 16, 2024            <u>s/F. Kay Behm</u>
                                           F. Kay Behm
                                           United States District Judge